UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MATTHEW ISAAC STEPHENS,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

No. 2:17-cv-01514 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born April 11, 1974, applied on December 20, 2013 for SSI and Disability Insurance Benefits, alleging disability beginning December 1, 2009. Administrative Transcript ("AT") 81, 200-210. Plaintiff alleged he was unable to work due to diabetes mellitus type 1, neuropathy, arthritis, anxiety, depression, degenerative disease of the cervical spine, and radiating

1

pain to the right shoulder. AT 80, 229. In a decision dated May 2, 2016, the ALJ determined that plaintiff was not disabled.[1] AT 20-31. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since December 1, 2009, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, status-post cervical fusion, bilateral adhesive capsulitis of the shoulders, diabetes mellitus type 1.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

> impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work with lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, he can stand and/or walk about six hours and sit about six hours. He can frequently climb, stoop, kneel, crouch, and crawl. He can occasionally reach overhead.
>
> 6. The claimant is capable of performing past relevant work as a bar tender, cashier II, and manager retail store. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability from December 1, 2009, through the date of this decision.

AT 22-30.

The ALJ also made the following alternative findings at Step Five:

> Although the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that he is also able to perform. Therefore the [ALJ] makes the following alternative findings for step five of the sequential evaluation process.
>
> The claimant was born on April 11, 1974 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant has at least a high school education and is able to communicate in English. . . .
>
> [C]onsidering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform.
>
> . . .
>
> If the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations as follows:
>
> 1. Document Specialist (DOT 249.587-018), sedentary work in exertional level, and unskilled with an SVP of two. In the national economy, 15,000 of these jobs exist.

> 2. Assembler (DOT 734.687-018) sedentary work in exertional level, and unskilled with an SVP of two. In the national economy, 28,000 of these jobs exist.
>
> 3. Escort Vehicle Driver (DOT 919.663-022), sedentary work in exertional level, and unskilled with an SVP of two. In the national economy, 20,000 of these jobs exist.
>
> . . .
>
> Based on the testimony of the vocational expert, the undersigned concludes that . . . the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate[.]

AT 29-30.

## ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) failed to find severe limitations of carpal tunnel syndrome and gastroparesis; (2) failed to find plaintiff presumptively disabled; (3) erred in weighing the medical evidence as to plaintiff's residual functional capacity; (4) erred in discounting plaintiff's credibility; and (5) erred in questioning the vocational expert.

## LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

////

4

The record as a whole must be considered, <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. <u>See</u> <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. <u>Id.</u>; <u>see also</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, <u>see</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. <u>See</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

## ANALYSIS

### A. Non-Severe Impairments

Plaintiff asserts that the ALJ erred at Step Two by failing to consider plaintiff's bilateral carpal tunnel syndrome and gastroparesis (a condition in which the stomach cannot properly empty), and failing to find them severe impairments.

An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including "(1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments

can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

Plaintiff was prescribed wrist braces for bilateral carpal tunnel syndrome in October 2012 (AT 507) and diagnosed in February 2013 with "very mild/borderline right median neuropathy at the wrist, consistent with carpal tunnel syndrome." AT 352. Plaintiff's treating physician listed "carpal tunnel syndrome on both sides" as a chronic condition at office visits in 2013 and 2014. AT 476, 459, 464, 594. State agency physician Dr. Elliott Gilpeer noted that plaintiff's carpal tunnel syndrome was very mild and that he retained normal grip strength. AT 116; see AT 352. Both Dr. Gilpeer and State agency physician Dr. Clarence Ballard concluded that plaintiff had a limited ability to reach right overhead, but that his handling, fingering, and feeling was unlimited. AT 88-89, 120-121.

Regardless of the findings at Step Two, the issue is whether the ALJ erroneously failed to include any limitations caused by plaintiff's impairments in the RFC. See Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("[I]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (internal quotes and citations omitted). Here, while the ALJ did not find carpal tunnel syndrome to be a severe impairment, he gave partial weight to the state agency physicians' reports, both of which concluded that plaintiff's carpal tunnel syndrome did not affect his ability to handle, finger, or feel. Plaintiff has not shown that his mild carpal tunnel syndrome resulted in functional limitations beyond those reflected in the RFC.

In August 2011, plaintiff was hospitalized for nausea and vomiting. AT 566, 568, 571. Three years earlier, prior to the alleged period of disability, he was diagnosed with possible gastroparesis or an ulcer, and treated with Prevacid. AT 581. In September 2014, plaintiff presented to the emergency room with abdominal pain and vomiting. AT 666. Plaintiff cites additional instances of heartburn and stomach pain; however, plaintiff does not show any specific

functional limitations arising from his gastrointestinal issues that the ALJ failed to include in the RFC.

   B.  Presumptive Disability

Plaintiff next asserts that the ALJ erred at Step Three, where he concluded that plaintiff's impairments did not meet or equal the elements of any presumptively disabling conditions.

The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985). It is the disability claimant's burden of proving that his or her impairments meet or equal the required elements of a Listing. Tackett v. Apfel, 180 F. 3d 1094, 1099 (9th Cir. 1999).

To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. 20 C.F.R. § 404.1526. A finding of equivalence must be based on medical evidence only. 20 C.F.R. § 404.1529(d)(3). When an ALJ considers limitations resulting from an impairment in the RFC, any error in not considering the impairment to be severe is harmless. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ concluded that plaintiff's "impairments, singly or in combination, fail to meet or medically equal the criteria of medical listings 1.02, 1.04, or any other medical listing." AT 24-25. Plaintiff challenges the ALJ's conclusions as to Listing 1.04 and 900.B.

Considering presumptive disability for a spinal disorder, the ALJ wrote:

> In order to meet medical listing 1.04, a claimant must exhibit a spinal disorder, such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral facture. The disorder must result in a compromise of the nerve root . . . or spinal cord with evidence of

7

> nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss. A MRI of the claimant's cervical spine showed the stable fusion of the C5 through C7 and a minimal disc bulge at C4-C5. [Ex. 4F at 56, 58.] Since the medical imaging shows no compromise of the exiting nerve roots or spinal cord, the claimant fails to meet medical listing 1.04.

AT 24.

The ALJ cited to a May 2013 MRI of plaintiff's cervical spine taken one month after plaintiff underwent spinal surgery. AT 430, 432. Plaintiff points out that, at Step Three, the ALJ did not mention evidence of cervical C7 radiculopathy prior to plaintiff's April 2013 surgery. In January 2013, Dr. Bryan Featherstone reviewed an MRI taken earlier that month and noted that it "showed C4 to C7 by herniated discs causing canal stenosis with cord impressions & left foraminal stenosis, C5-6" with "weakness in the right arm, dropping things." AT 498; see AT 355-356. At a medical visit two days later, plaintiff's primary care physician assessed him with "radiculopathy of cervicothoracic region" with severe pain. AT 497.

On April 19, 2013, Dr. Joel Ulloth performed neck surgery on plaintiff consisting of an anterior cervical discectomy and fusion. AT 308. Dr. Ulloth diagnosed plaintiff, both pre- and post-surgery, with cervical stenosis, cervical radiculopathy, and chronic neck pain. AT 308. Two days after surgery, plaintiff was discharged with a hard cervical collar and instructions not to lift, push, or pull anything greater than 10 pounds for the next six weeks. AT 308.

The ALJ discussed plaintiff's January 2013 and March 2013 MRIs, his April 2013 cervical fusion, and his May 2013 post-surgical MRI in the residual functional capacity (RFC) analysis. AT 26. State agency physicians Dr. Gilpeer and Dr. Ballard reviewed plaintiff's pre- and post-surgery medical records, and the ALJ gave partial weight to their opinions, restricting plaintiff to occasional reaching overhead bilaterally and postural limitations. As to presumptive disability, plaintiff has not met his burden of proving that he met all the elements of Listing 1.04, including neuro-anatomic distribution of pain, reduced range of motion, motor loss or weakness, and reflex or sensory loss[2], for any period during the alleged period of disability. Notably, his

---

[2] Listing 101.04 provides for "Disorders of the spine (e.g., lysosomal disorders, metabolic disorders, vertebral osteomyelitis, vertebral fracture, achondroplasia) resulting in compromise of

8

neurological examinations consistently showed normal strength, reflexes, and sensation. E.g., AT 497, 500, 504, 507, 510, 515, 522, 526, 531, 542, 545.

Regarding presumptive disability due to diabetes complications, the ALJ wrote:

> Although diagnosed with diabetes mellitus, the claimant shows no evidence of end organ damage. With the revision of Appendix A of the Regulations (the Listings of Impairments) . . . , the Regulations no longer give a specific listing for diabetes mellitus. In addition, claimant shows no evidence of complications of diabetes as described in Section 900B.5.

AT 25.

Plaintiff cites evidence that he suffered complications from diabetes. E.g., AT 580-582 (2010 diagnosis of "Type 1 diabetes poor control"); AT 566-567 (plaintiff hospitalized in 2011 for diabetic ketoacidosis ("DKA")); AT 670 (plaintiff hospitalized in 2014 for DKA). The ALJ addressed this in the RFC portion of the decision, writing:

> Regarding the claimant's diabetes, he suffered an episode of ketoacidosis due to the failure of his insulin pump in September of 2014. With treatment, doctors reported a resolution of this issue and controlled glucose readings from 50 to 80. . . With the use of a proper diabetic insulin pump, the medical records show his diabetes controlled.

AT 26; see AT 670, 734, 737. Plaintiff does not explain what diabetes-related listing he purportedly meets or show that he meets every element of said listing. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 900B(5) (regarding diabetes mellitus and other pancreatic gland orders). As plaintiff has not shown presumptive disability on this basis, to the extent the ALJ's Step Three statement that plaintiff showed "no evidence of complications of diabetes as described in Section 900B.5" was erroneous, it was harmless error.

////

---

a nerve root (including the cauda equina) or the spinal cord, with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

9

C.  Residual Functional Capacity

Plaintiff asserts that the physical RFC was not supported by substantial evidence, as the ALJ partially credited state medical opinions by Dr. Ballard and Dr. Gilpeer but rejected "without explanation" the opinions of Dr. Ulloth and Dr. Featherstone.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

As discussed above, Dr. Featherstone reviewed plaintiff's January 2013 MRI, which, as the ALJ noted, reported "degenerative disc disease with stenosis of the C4-C5, C5-C6, and C6-C7." AT 26, 355, 498-500. Two months later, Dr. Ulloth reviewed the same MRI, diagnosed plaintiff with cervical radiculopathy, recommended surgical intervention, and performed the

10

surgery in April 2013.  AT 337, 308.  "Medical imaging after this surgery," the ALJ wrote, "dated May 22, 2013, showed the stable fusion of the C5 through C7 and a minimal disc bulge at C4-C5."  AT 26; see AT 430, 432 (Dr. Ulloth's review of post-surgical MRI).

Though plaintiff argues that the ALJ discounted Dr. Ulloth's and Dr. Featherstone's opinions in formulating the RFC, neither set forth limitations on plaintiff's ability to perform work-related activity.  Rather, their reports show that plaintiff was found to need surgery for his spinal condition, underwent surgery, and improved.  See 20 C.F.R. § 404.1530(a) (claimants must follow prescribed treatment if it is expected to restore ability to work).  As to plaintiff's functional capacities, the ALJ credited the state agency physicians, who reviewed plaintiff's pre- and post-surgical records and found his limitations to be non-disabling.  "No treating physician opined as to greater limitation" than reflected in the RFC, the ALJ noted.  AT 27.  The court finds no error on this basis. `

Plaintiff next claims error because, while the ALJ stated at one point that plaintiff was restricted to "occasional" postural activities (AT 27), the RFC provides for "frequent" postural activities.  AT 25.  The ALJ posed hypothetical questions to the vocational expert (VE) that assumed frequent postural activities, and the VE concluded that plaintiff could perform past relevant work as a bar tender, cashier, and retail manager.  AT 72-73.

First, despite the discrepancy in the body of decision, the RFC for postural limitations is supported by Dr. Gilpeer's assessment, which found that plaintiff could stand, walk, and sit for six hours of an eight-hour workday; frequently climb ramps, stairs, ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl.  AT 120.  These medically supported limitations were reflected in the hypothetical to the VE.  AT 73.

Second, even if the RFC specified "occasional" postural activities as plaintiff urges, the VE found that, in addition to past relevant work, plaintiff could perform the jobs of document preparer, assembler, and escort vehicle driver.  AT 30.  These are sedentary jobs which require occasional or no postural activities.  See Dictionary of Occupational Titles (DOT) 249.587-018, 1991 WL 672349 (document preparer), DOT 734.067-18, 1991 WL 679950 (assembler), DOT 919.663-022, 1991 WL 687886 (escort vehicle driver).  The ALJ made alternative step five

findings that plaintiff could perform these sedentary jobs, which existed in significant numbers in the national economy. AT 30. Thus any error in this regard is harmless. See 20 C.F.R. § 404.1566(b); Thomas v. Comm'r, 480 F3d. Appx. 462, 464 (9th Cir. 2012) (affirming ALJ even though claimant could not perform two identified jobs because she could perform the remaining job of housekeeper, which existed in significant numbers in the national economy).

        D.   Credibility

Plaintiff next asserts that the ALJ erred by discounting plaintiff's credibility as to the severity of his impairments and symptoms. See AT 25. For example, plaintiff stated he was unable "to lift more than five pounds and walk longer than a fourth of a mile" without a break, nor was he able to play golf, fish, sculpt, or paint. AT 25; see AT 265, 48-49.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek

treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ wrote that plaintiff's activities of daily living "illustrates a person more able bodied than alleged," including "taking care of his personal hygiene, driving, attending physical therapy two to three times a week, watching television, going for walks, golfing, painting, and caring for his pets." AT 27. The ALJ concluded that such activities "appear to contradict the allegations of constant pain [and] lifting no more than five pounds." AT 27.

The ALJ also compared plaintiff's statements to the objective medical record, noting that "[t]he treatment records and medical imaging fail to show an inability to ambulate or an inability to perform fine and gross movements effectively" (AT 24); 2011 primary care records of normal rotation of the back/spine and negative straight-leg testing (AT 25-26, 535); 2013 primary care records of "only mild reduction of the range of motion of the cervical spine" and no apparent distress (AT 26, 496); and 2013 records indicating plaintiff's right shoulder had "no acute abnormalities and only mild degenerative joint disease," with "normal upper and lower strength, except slightly reduced strength of the right deltoid" that improved with treatment. AT 26, 579, 340, 417. The ALJ further stated that plaintiff's claims of moderate pain in both shoulders "appears to contradict his statement of September 2015, of noticing no impingement while golfing for exercise." AT 26, 716 (September 2015 medical note that plaintiff "golfs for exercise"). As the ALJ used the proper process and provided proper reasons for discounting plaintiff's credibility, and the court defers to the ALJ's discretion on this issue.

Nor did the ALJ err discounting the statements of plaintiff's wife, citing contradictory medical evidence after plaintiff's spinal surgery. AT 28. See Bayliss v. Barnhart, 427 F.3d 1211,

1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason.") (internal citation omitted); see also Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009).

E. Vocational Expert

Plaintiff asserts that the ALJ's hypothetical questions to VE were unsupported by substantial evidence for reasons set forth in his earlier claims. As plaintiff's final claim adds little to the arguments addressed above, the court finds no prejudicial error on this basis.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is granted; and

3. Judgment is entered for the Commissioner.

Dated: January 15, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/stephens1514.ssi.ckd